UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XL SPECIALTY INSURANCE COMPANY,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>GODFATHER EXPRESS, INC.,<br><br>　　　　Defendant. | Case No.  1:24-cv-01451-KES-BAM<br><br>**FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br><br>(Doc. 20)<br><br>**FOURTEEN DAY DEADLINE** |

Currently pending before the Court is Plaintiff XL Specialty Insurance Company's ("Plaintiff") Motion for Default Judgment against Defendant Godfather Express, Inc. ("Defendant").[1]  (Doc. 25.)  The motion was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.  Defendant did not file an opposition to the motion, and the time in which to do so has passed.  L.R. 230(c) ("Opposition . . . to the granting of the motion shall be in writing and shall be filed and served no later than fourteen (14) days after the motion was filed.")

---

[1] Plaintiff initially named Dhawan Transport as a co-defendant in this action.  (Doc. 1.)  Dhawan Transport could not be located and service could not be effectuated.  (*See* Doc. 9.)  On August 27, 2025, Plaintiff filed a notice of voluntary dismissal without prejudice for Dhawan Transport pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), and Dhawan Transport was dismissed from the action.  (Doc. 19.)

The Court finds this matter suitable for decision without oral argument. L.R. 230(g). (Doc. 24.) Having considered the moving papers and the record in this action, and for the reasons that follow, the Court RECOMMENDS that Plaintiff's Motion for Default Judgment be GRANTED.

## I.   FACTUAL BACKGROUND

Plaintiff XL Specialty Insurance Company is a Delaware corporation, insurer, and consignee of several shipments of electronic and household goods (the "Cargo") that Plaintiff alleges were lost or stolen by Defendant. (Doc. 1 ¶ 8.)

On November 26, 2024, Plaintiff initiated this insurance subrogation action against Defendant stemming from losses incurred from five shipments of goods in October and November 2022. (Doc. 1.) Plaintiff's insured is XPO Logistics ("XPO"). (Doc. 1 ¶ 8.) XPO maintains a Brokerage Service Agreement with Best Buy Warehousing Logistics ("Best Buy") pursuant to which XPO brokers Best Buy shipments to authorized carriers and manages those shipments. (*Id.* ¶ 8; Declaration of John Eric Olson in support of Plaintiff's Motion for Default Judgment ¶ 10 (Doc. 26) ("Olsen Decl.").) Pursuant to a Broker/Carrier Service Agreement with Defendant, XPO booked six loads of Cargo for Defendant to transport according to the terms and conditions of the Agreement. (Doc. 1 ¶ 8; Olsen Decl. Ex. A.) Plaintiff insured XPO against loss or damage under a policy of insurance, and reimbursed XPO the value of the lost Cargo, plus related costs, to the extent of coverage provided. (Doc. 1 ¶¶ 1, 17.)

The shipments at issue in this action originated from various locations within California for ultimate delivery to a Best Buy location in Dinuba, California. (*Id.* ¶ 8.) Plaintiff alleges that Defendant entered into the Broker/Carrier Services Agreement without the intent to perform. (*Id.*) Instead, Defendant provided documentation that it was an authorized carrier and posed as a legitimate carrier for the purpose of stealing the Cargo. (*Id.*) Plaintiff further alleges that Defendant was a part of an organized crime ring that has been engaging in mass thefts of cargos transported by truck in California. (*Id.*) Plaintiff reports that California law enforcement has identified the crime ring as "The Singh Gang" and determined that XPO was a victim of the crime ring's fraud scheme. (Olsen Decl. ¶ 7.) According to Plaintiff, the crime ring would receive

2

1 loads of cargo, remove significant amounts of product from each shipment, create fraudulent bills
2 of lading indicating that a smaller quantity was picked up, and deliver what remained of the load
3 to Best Buy at its Dinuba, CA facility.  (*Id.*)  The crime ring would then produce another
4 fraudulent bill of lading with the full original quantities with a fraudulent Best Buy stamp that
5 indicated the load had been delivered in full.  (*Id.* ¶ 8.)  Because of Defendant's fraud, neither
6 Best Buy nor XPO were aware of the theft and XPO did not become aware of the shortages until
7 Best Buy filed claims against XPO for the missing Cargo.  (*Id.*)  None of the Cargo was able to be
8 recovered by law enforcement.  (*Id.* ¶ 9.)

The following shipments of Cargo were subject to theft from October through November 2022, and Plaintiff provides the resulting damages: (1) Claim 7699, consignment of Shark Ninja carpet cleaners ($67,388.49), (2) Claim 7885, consignment of Targus carrying cases ($86,552.21), (3) Claim 7871, consignment of unidentified electronics ($76,928.04), (4) Claim 7901, consignment of Sound United audio equipment ($237,826.51), (5) Claim 7524, consignment of unidentified cargo ($56,071.62), (6) Claim 3652, consignment of LCD monitors ($176,456.74), and (7) Claim 5728, consignment of Segway kickscooters ($132,020.46).  (Doc. 1 ¶ 9.)  In sum, the value of the lost Cargo is $833,204.07, none of which has been recovered.  (*Id.* ¶ 10.)  Plaintiff has provided copies of the invoices and bills of lading in support of its allegations.  (Olsen Decl. Exs. C, D, E.)  In addition, Plaintiff provides a comprehensive report of the losses as prepared by Plaintiff's retained investigations firm.  (Olsen Decl. Ex. B.)

In January 2023 and May 2023, Best Buy initiated claims for the stolen goods missing from the five reported shipments.  (Olsen Decl. ¶ 5.)  As insurer of the owner and consignee of the Cargo, Plaintiff paid the claims.  (*Id.*; Doc. 1 ¶ 1.)  Plaintiff has demanded that Defendant reimburse the value of the Cargo, plus related costs.  (Doc. 1 ¶ 17.)  To date, Defendant has not reimbursed Plaintiff for the value of the Cargo or related costs.  (*Id.*)

**II.    PROCEDURAL BACKGROUND**

On November 26, 2024, Plaintiff initiated this action against Defendant.  (Doc. 1.)  Plaintiff brings claims for (1) breach of contract, (2) conversion, (3) violation of California Civil Code § 2194, and (4) bailment.  In its Prayer for Relief, Plaintiff seeks (1) $833,204.07 for the

3

1  value of the lost or stolen Cargo, (2) incidental and consequential damages according to proof,
2  and (3) costs of the suit including interest. (*Id.* at 6.)

3  On February 21, 2025, Defendant was personally served with a copy of the complaint by
4  substituted service in accordance with California Code of Civil Procedure § 415.20(a). (Doc. 11.)
5  A copy of the summons and complaint was left with the individual in charge at Defendant's
6  corporate office, which is also listed as the location of its agent for service of process. (Doc. 12-1
7  at 1-2.) Service was mailed on February 21, 2025. (*Id.*) Defendant did not answer the complaint
8  or file a responsive pleading. Plaintiff's counsel has provided that he has not been contacted by
9  an attorney or anyone else on behalf of Defendant. (*Id.* at 2.) Defendant has not filed an
10 appearance or appeared at any conference before the Court. (*See* Doc. 8, 13, 17.)

11 On May 6, 2025, Plaintiff filed a Request for Entry of Default against Defendant. (Decl.
12 of Adam C. Brown (Doc. 12) ("Brown Decl.").) The same day, the Clerk of Court entered
13 default against Defendant. (Doc. 15.) On August 27, Plaintiff filed a Motion for Default
14 Judgment and accompanying Declaration against Defendant on the grounds that Defendant has
15 failed to answer or otherwise respond to the complaint within the time prescribed by the Federal
16 Rules of Civil Procedure. (Docs. 20, 21.) On October 14, 2025, Plaintiff filed a memorandum of
17 law and accompanying Declaration in support of its Motion for Default Judgment. (Docs. 26,
18 27.) Defendant has not filed any responsive brief to Plaintiff's Motion for Default Judgment, and
19 the time to do so has since passed.

20 **III.    LEGAL STANDARD**

21 Federal Rule of Civil Procedure 55(b)(1) outlines the circumstances under which the clerk
22 of the court may enter default judgment. "If the plaintiff's claim is for a sum certain or a sum that
23 can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit
24 showing the amount due—must enter judgment for that amount and costs against a defendant
25 who has been defaulted for not appearing and who is neither a minor nor an incompetent person."
26 Fed. R. Civ. P. 55(b)(1). Rule 55(b)(2) states that in "all other cases, the party must apply to the
27 court for a default judgment." Fed. R. Civ. P. 55(b)(2). "The court may conduct hearings or
28 make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate

4

judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." *Id*. "Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true." *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986); *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002).

**IV.   DISCUSSION**

The Court shall address each of the *Eitel* factors in turn. For the reasons provided below, the Court finds that these factors weigh in favor of the entry of default judgment against Defendant.

### A.  Service of Process

In deciding whether to grant or deny a default judgment, a court should assess the adequacy of the service of process on the party against whom default is requested. *See, e.g., Trujillo v. Harsarb, Inc.*, No. 1:21-cv-00342-NONE-SAB, 2021 WL 3783388 at *4 (E.D. Cal. Aug. 26, 2021) ("As a general rule, the Court considers the adequacy of service of process before evaluating the merits of a motion for default judgment."); *Coach, Inc. v. Diva Shoes & Accessories*, No. 10-5151 SC, 2011 WL 1483436 at *2 (N.D. Cal. Apr. 19, 2011); *Katzakian v. Check Resolution Service, Inc.*, No. 1:10-cv-00716-AWI-GSA, 2010 WL 5200912 at *2 (E.D. Cal. Dec. 15, 2010).

Rule 4 sets forth the requirements for serving a corporation, partnership, or association within a judicial district of the United States. Pursuant to Rule 4(h), a domestic corporation, or a partnership or other unincorporated association that is subject to suit under a common name, may

1 be served by following state law for service of a summons on an individual or by delivering a
2 copy of the summons and complaint to an officer or agent and by a mailing a copy of each to the
3 defendant. Fed. R. Civ. P. 4(h)(1).

4     In California, a corporation may be served by delivery to the person designated as an
5 agent for service of process, or to the "president, chief executive officer, or other head of the
6 corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a
7 controller or chief financial officer, a general manager, or a person authorized by the corporation
8 to receive service of process." Cal. Civ. Proc. Code § 416.10. A corporation may also be served
9 via substituted service by "leaving a copy of the summons and complaint during usual office
10 hours in [the office of the person to be served] . . . with the person who is apparently in charge
11 thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail,
12 postage prepaid to the person to be served at the place where a copy of the summons and
13 complaint were left." Cal. Civ. Proc. Code § 415.20(a). Under this provision, "[s]ervice of a
14 summons in this manner is deemed complete on the 10th day after the mailing." *Id.*

15     According to California's Office of the Secretary of State, Defendant listed Sucha Singh,
16 4460 W. Shaw Ave # 192, Fresno, CA 93722, as Defendant's Chief Executive Officer, Secretary,
17 and Chief Financial Officer. (Doc. 12-1 at 7-8). On February 21, 2025, Plaintiff served
18 Defendant with the summons and complaint in this action by substituted service in accordance
19 with California Code of Civil Procedure § 415.20(a). (Doc. 11; Brown Decl. ¶ 4.) A copy of the
20 summons and complaint was left at Sucha Singh's address, which is also listed as Defendant's
21 corporate office and the location of its agent for service of process. (Doc. 11 at 1; Brown Decl. ¶
22 4.) A copy of the summons and complaint was mailed to Sucha Singh's address the same day.
23 (Doc. 11 at 2.) The time for Defendant to file an answer or other responsive pleading expired on
24 March 24, 2025. Fed. R. Civ. P. 12(a)(1)(A)(i).

25     On September 16, 2025, copies of the Notice of Motion and Motion for Entry of Default
26 Judgment against Defendant were served at the address provided for Defendant's Chief Executive
27 Officer, Secretary, and Chief Financial Officer via mail. (Doc. 27.)

28     The Court finds that Plaintiff properly served Defendant pursuant to Rule 4(h).

**B. The *Eitel* Factors Weigh in Favor of Default Judgment**

1. Possibility of Prejudice to Plaintiff

The first factor considers whether a plaintiff would suffer prejudice if default judgment were not entered. *See PepsiCo, Inc*., 238 F.Supp.2d at 1177. Generally, where default has been entered against a defendant, a plaintiff has no other means by which to recover against that defendant. *Id*.; *Moroccanoil, Inc. v. Allstate Beauty Prods*., 847 F.Supp.2d 1197, 1200-01 (C.D. Cal. 2012). Here, Plaintiff seeks relief against a party that it alleges has orchestrated a complex fraud scheme throughout California and has caused Plaintiff $833,204.07 in damages. (Doc. 1 ¶¶ 8, 10.) Plaintiff further states that it has already demanded that Defendant reimburse the value of the Cargo and related costs, but that Defendant has refused to reimburse Plaintiff. (*Id.* ¶ 17.) Defendant has not attended any mandated conferences or otherwise participated in this action. (*See* Docs. 8, 13, 17.) Here, the Court finds Plaintiff would be prejudiced if default judgment were not granted.

This factor weighs in favor of default judgment.

2. Merits of Plaintiff's Claims and Sufficiency of the FAC

The second and third *Eitel* factors, taken together, "require that a plaintiff state a claim on which [they] may recover." *PepsiCo, Inc*., 238 F. Supp. 2d at 1175. Notably a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (internal citation omitted).

Plaintiff's allegations are taken as true due to Defendant's default, and the Court finds that each of the claims brought in this action are claims upon which Plaintiff may recover.

*a) Breach of Contract*

"Under California law, the elements of a breach of contract claim are: '(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach and (4) the resulting damages to the plaintiff.'" *Fudy Printing Co*., 2019 WL 2180221, at *3 (citing *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011)).

Here, accepting the complaint's factual allegations as true, Plaintiff's insured entered into a valid and enforceable Broker/Carrier Agreement with Defendant wherein Defendant agreed to

7

provide transportation according to the relevant agreement's terms and conditions, safely and promptly carry the Cargo, and deliver it to the intended destination. (Olsen Decl. Ex. A.; Doc. 1 ¶ 14.) Plaintiff's insured performed all conditions, covenants, and promises under the Agreement, including payment in full to Defendant for services rendered. (Doc. 1 ¶ 15.) Defendant did not uphold its end of the bargain by failing to safely carry and deliver the Cargo to its intended destination. (*Id.* ¶¶ 8, 16.) As a direct and proximate result of Defendant's breach of contract, Plaintiff provides that it has suffered damages in the amount of $833,204.07. (*Id.* ¶¶ 9, 18.) As the party that pays the insured's loss, Plaintiff "stands in the shoes" of the insured and succeeds in the insured's rights and remedies. *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 957 (9th Cir. 2013).

These allegations are legally sufficient to entitle Plaintiff to judgment against Defendant on the breach of contract claim. *See Fudy Printing Co.*, 2019 WL 2180221, at *3; *Paramount Citrus Co-op.*, *Inc. v. H & M Produce Inc.*, No. 1:08-cv-01210-AWI-SMS, 2008 WL 4716764, at *5 (E.D. Cal. Oct. 24, 2008), *report and recommendation adopted*, No. 1:08-CV-01210-AWI-SMS, 2008 WL 5389711 (E.D. Cal. Dec. 24, 2008) (citing Cal. Civ. Code §§ 1550 et seq.) ("Plaintiff has alleged the contract, its performance of the contract, [Defendant's] breach of the contract, and damages. This is legally sufficient to entitle the Plaintiff to judgment against [Defendant] on the claim for breach of contract.")

*b) Conversion*

Under California law, the elements of conversion are: (1) the plaintiff's ownership or right to possession of the property, (2) the defendant's conversion by wrongful act or disposition of property rights, and (3) damages. *Freedom Mortg. Corp. v. Madariaga*, No. 2:19-CV-2432-DC-SCR, 2025 WL 750600, at *5 (E.D. Cal. Mar. 10, 2025). As an insurer, Plaintiff has the "right to be put in the position of the insured in order to pursue recovery from third parties legally responsible to the insured for a loss which the insurer has both insured and paid." *Interstate Fire & Cas. Ins. Co. v. Cleveland Wrecking Co.*, 182 Cal. App. 4th 23, 32 (2010). Accepting the complaint as true, Plaintiff's insured was the rightful owner of the Cargo, Defendant intentionally converted the Cargo to their own use by stealing Cargo from each transported load in violation of

Plaintiff's rights as the lawful owner and caused Plaintiff to sustain $833,204.07 in damages. (Doc. 1 ¶¶ 20-23.)

These allegations are legally sufficient to entitle Plaintiff to judgment against Defendant on the conversion claim. *See Joe Hand Promotions, Inc. v. Singh*, No. 1:13-CV-01484-LJO-SK, 2014 WL 1275712 (E.D. Cal. Mar. 27, 2014), at *3 (finding Plaintiff entitled to default judgment on conversion claim).

### c) Bailment

"California law generally defines a bailment as the delivery of a thing in trust for a purpose upon an implied or express contract." *Whitcombe v. Stevedoring Servs. of Am.*, 2 F.3d 312, 316 (9th Cir. 1993), *as amended* (Aug. 16, 1993) (citing *Greenberg Brothers, Inc. v. Ernest W. Hahn, Inc.*, 246 Cal.App.2d 529, 54 Cal.Rptr. 770, 772 (1966)).  Plaintiff states that the Cargo was delivered to Defendant in good condition for transport to the intended Best Buy location. (Doc. 1 ¶ 29.)  Defendant agreed to transport the Cargo and ensure that it reached its destination in the same good order and condition as it was received. (*Id*.)  Defendant then failed to prevent damage or loss of the Cargo, breached its duties as a provider of transportation services and bailee of the Cargo, and failed to act with the adequate standard of care. (*Id.* ¶ 30.)  As a result, Plaintiff sustained $833,204.07 in damages due to the lost or stolen Cargo. (*Id.* ¶ 31.)

These allegations are legally sufficient to entitle Plaintiff to judgment against Defendant on the bailment claim. *See US Airline Servs., LLC v. Elec. Com., LLC*, No. 8:21-CV-01436-JLS-KES, 2022 WL 19914519, at *4 (C.D. Cal. Aug. 22, 2022) (finding plaintiff to adequately state a bailment claim where defendant fraudulently held funds past the agreed-upon time limit and refused to return the funds); *Whitcombe*, 2 F.3d at 316 (upholding lower court's determination that a bailment relationship existed when a cargo owner delivered automobiles to a terminal operator that ultimately damaged the automobiles).

### d) California Civil Code Section 2194

California Civil Code Section 2194 provides that "[u]nless the consignor accompanies the freight and retains exclusive control thereof, an inland common carrier of property is liable, from the time that he accepts until he relieves himself from liability pursuant to Sections 2118 to 2122,

for the loss or injury thereof from any cause whatever . . ." Cal. Civ. Code § 2194. As relevant here, the carrier was required to (1) deliver the cargo to the consignee, at the place to which it is addressed, in the manner usual at that place, and (2) either deliver it to the consignee or his agent personally, or give notice of its arrival and keep it safely until the consignee has had reasonable time to remove it. Cal. Civ. Code §§ 2118, 2120.

According to Plaintiff, the Cargo was delivered to Defendant, who received, accepted, and agreed to transport the Cargo for consideration. (Doc. 1 ¶ 25.) Plaintiff states that Defendant failed to prevent damage to or loss of the Cargo, breached and violated its duties as providers of transportation services, and failed to act within the standard of care required of a carrier, bailee, or broker of goods for hire. (*Id.* ¶¶ 8, 26.) As a result, Plaintiff sustained $833,204.07 in damages. (*Id.* ¶¶ 10, 27.)

These allegations are legally sufficient to entitle Plaintiff to judgment against Defendant concerning Defendant's liability under California Civil Code § 2194.

### 3. The Sum of Money at Stake in the Action

Under the fourth factor cited in *Eitel*, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc.*, 238 F Supp.2d at 1176; *see also Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003). "When the money at stake is substantial, default judgment is discouraged." *Bd. of Trs. v. Core Concrete Constr., Inc.*, No. 11-02532 LB, 2012 WL 380304, at *4 (N.D. Cal. Jan. 17, 2012) (internal citation omitted). However, when "the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Id.* (internal citation omitted). "In determining whether the amount at stake is reasonable, courts consider a plaintiff's declarations, calculations, and other documentation of damages." *Fudy Printing Co.*, 2019 WL 2180221, at *4.

Plaintiff asserts $833,204.07 in damages, which represents the sum of the total value of the lost or stolen Cargo. (Doc. 1 at 6.) Plaintiff's request is reasonable, supported by undisputed allegations in the complaint, declarations, and submitted documentation. Additionally, the sum "flows directly from [Defendant's] breach of contract." *Fudy Printing Co.*, 2019 WL 2180221, at

*5.

This factor weighs in favor of default judgment.

### 4. The Possibility of a Dispute Concerning Material Facts

Following the Clerk's entry of default, the Court may assume the truth of well-pled facts in the complaint and, thus, there is no likelihood that any genuine issue of material fact exists. *Dundee Cement Co.*, 722 F.2d at 1323; *TeleVideo Sys., Inc.*, 826 F.2d at 917-18. Further, Defendant's failure to file an answer in this case or a response to the instant motion supports the conclusion that the possibility of a dispute as to material facts is minimal. *See, e.g., Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists.") Furthermore, Plaintiff properly served Defendant's registered agent for service of process with the complaint and Motion for Default Judgment (Docs. 11, 27), but Defendant failed to appear and respond to the complaint or to this motion. *See Fudy Printing Co.*, 2019 WL 2180221, at *5 ("The record reflects [Defendant's] silence despite opportunities to respond, so there is little possibility of a dispute of material facts.")

This factor weighs in favor of default judgment.

### 5. Whether the Default Was Due to Excusable Neglect

The sixth *Eitel* factor considers the possibility that Defendant's default resulted from excusable neglect. *PepsiCo, Inc.*, 238 F.Supp.2d at 1177. Courts have found that where a defendant was "properly served with the complaint, the notice of entry of default, as well as the paper in support of the [default judgment] motion," there is no evidence of excusable neglect. *Shanghai Automation Instrument Co. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001).

Upon review of the record, the Court finds that the default was not the result of excusable neglect. As discussed above, Defendant was properly served with the summons, complaint, and the Motion for Default Judgment. (Docs. 11, 27.) Despite service, Defendant has not appeared. Thus, the record suggests that Defendant has chosen not to participate in this action, and not that the default resulted from any excusable neglect.

11

This factor weighs in favor of the entry of a default judgment.

### 6. The Strong Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. *PepsiCo, Inc.*, 238 F.Supp.2d at 1177; *see also Craigslist, Inc. v. Naturemarket, Inc.*, 694 F.Supp.2d 1039, 1061 (N.D. Cal. Mar. 5, 2010). Although the Court is cognizant of the policy favoring decisions on the merits, that policy is unavailable here because Defendant has not responded or otherwise participated in this action in any way.

This factor does not weigh against entry of default judgment.

## V. DAMAGES

Plaintiff states in its brief that it seeks to recover the invoice value of the lost or stolen Cargo, plus court costs, and that no other damages are being sought. (Doc. 25 at 6.) The Court finds that Plaintiff is entitled to judgment for the amount of $833,204.07.

### A. Principal Damages

Plaintiff states that the invoice value of the lost Cargo is $833,204.07, for which Plaintiff has reimbursed its insured under the relevant insurance policy, and none of which has been recovered. (Doc. 1 ¶¶ 1, 10.) Plaintiff has established that it is entitled to default judgment under Rule 55(b). Thus, Plaintiff is entitled to judgment for the amount of $833,204.07.

### B. Other Damages

In its complaint, Plaintiff seeks (1) $833,204.07 for the value of the lost or stolen Cargo, (2) incidental and consequential damages according to proof, and (3) the costs of suit, including interest. (Doc. 1 at 6.) In the pending motion, Plaintiff now "seeks to recover the invoice value of the stolen Cargo, plus court costs. No other damages are being sought." (Doc. 25 at 6.) Plaintiff does not provide additional information, in either its brief or declarations, to permit the Court to determine the amount of incidental or consequential damages, costs of the suit that have been incurred by Plaintiff, or interest.

//

## VI. CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court HEREBY RECOMMENDS that Plaintiff's Motion for Default Judgment (Doc. 25) be **GRANTED**. Accordingly, the Court RECOMMENDS that:

1. Default judgment shall be entered in favor of Plaintiff XL Specialty Insurance Company and against Defendant Godfather Express, Inc.;
2. Plaintiff shall be awarded damages in the amount of $833,204.07; and
3. This action shall be closed.

Plaintiff is HEREBY **ORDERED** to mail a copy of these findings and recommendations to Defendant at the address of Defendant's registered agent for service of process.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." **Objections, if any, shall not exceed fifteen (15) pages or include exhibits. Exhibits may be referenced by document and page number if already in the record before the Court. Any pages filed in excess of the 15-page limit may not be considered.** The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **November 20, 2025**          /s/ *Barbara A. McAuliffe*
                                        UNITED STATES MAGISTRATE JUDGE